1

2

3                                                                    O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   DEBBIE FITZPATRICK SECKLER, )   Case No. SACV 10-01188 DDP (Rzx)
     individually and on behalf  )
12   of all others similarly;    )   [Dkt. No. 25]
     RICHARD SILVA, individually )
13   and on behalf of all others )   ORDER GRANTING IN PART AND
     similarly,                  )   DENYING IN PART PLAINTIFFS'
14                               )   JOINT MOTION  FOR CLASS
                  Plaintiffs,    )   CERTIFICATION
15                               )
          v.                     )
16                               )
     KINDRED HEALTHCARE OPERATING )
17   GROUP, INC.; KINDRED        )
     HOSPITALS WES LLC, KINDRED  )
18   NURSING CENTERS WEST LLC,   )
     THC ORANGE COUNTY doing     )
19   business as KINDRED HOSPITAL )
     WESTMINSTER,                )
20                               )
                  Defendants.    )
21   _____ )

22        Presently before the court is Plaintiffs Flordeliza Escano,

23   Marila P. Maximo, Joel T. Catublas, and Penny Burney (collectively

24   "Escano Plaintiffs") and Plaintiffs Debbie Fitzpatrick-Seckler and

25   Richard Silva (collectively "Fitzpatrick Plaintiffs")'s Joint

26   Motion for Class Certification.[1]  Having considered the parties'

27

28   _____

          [1] The two actions have not been consolidated but the court has
     been addressing them together.

submissions and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

The Escano Plaintiffs and the Fitzpatrick Plaintiffs are hourly employees at hospitals owned by Kindred Healthcare Operating Group, Inc. ("KHOI" or "Kindred"). (Ballard Depo. 16:16-19; Ballard PMQ-KHW Depo. 13:9-10.) Plaintiff Flordeliza Escano worked at Kindred Santa Ana as a licensed vocational nurse from 2004 to 2008. (Escano Depo. 31:17-19; 43:1-9.) Plaintiff Marila Maximo worked from 1997 to October 2008 at Kindred Santa Ana, first as a monitor tech and later as a licensed vocational nurse. (Maximo Depo. 57:8-10; 84:16-19; 34:15-18.) Plaintiff Penny Burney worked from June 20, 1997, to November 2007 at Kindred La Mirada as a supervisor of respiratory therapists. (Burney Depo. 40:13-15; 33:15-20; 145:2-146:19.) Plaintiff Debbie Fitzpatrick-Seckler worked from 1995 to approximately 2000 and then from 2008 to the present at Kindred Westminster as a licensed vocational nurse. (Fitzpatrick Depo. 15:23-16:4.) Plaintiff Richard Silva has worked as a respiratory therapist from 1993 to the present at Kindred Westminster. (Depo. Silva 58:12-24.) Plaintiffs filed their actions on a class basis.

The Escano and Fitzpatrick Plaintiffs collectively allege violations of wage and hour laws, specifically failure to pay appropriate overtime compensation, failure to provide meal periods, and failure to furnish accurate itemized wage statements.

**II. LEGAL STANDARD**

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at

least one of the requirements of Rule 23(b) are met.  See Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Hanon, 976 F.2d at 508.  These four requirements are often referred to as numerosity, commonality, typicality, and adequacy.  See Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).  "In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation and citations omitted).  This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

## III. DISCUSSION

### A. Joint Employer Liability

The court finds that Plaintiffs have sufficiently alleged that Kindred is a joint employer for the purposes of class

3

certification.  In addition to owning all shares of the hospitals in question, Kindred enters into "Administrative and Support Services Agreements" with the hospitals or groups of hospitals where Plaintiffs work.  (Ballard Depo. 117:17-18; Carney Decl., Exhs. 4, 5.)  Kindred performs payroll functions (Thommen Depo. 35:19-23), distributes a uniform employee handbook to employees (Jasnoff Depo. 16:7-13; Carney Decl., Exhs. 1-3), plays a role in setting overtime policy (Thommen Depo. 65:23-66:10), maintains the Kronos timekeeping system (Wilson Depo. 25:19-29:10), provides orientation to newly hired CEOs (Tharasri Depo. 93:2-16; 94:5-8, 24-25), and screens employees prior to hiring. (Bibal Depo. 21:23-25; 22:1-10; 28:15-25; 29:1-2.)  To the extent that different hospitals under the Kindred umbrella have different policies, this will be addressed in the consideration of the 23(a) commonality requirement.

**B. AWS Overtime Class**

Plaintiffs propose the following definition for their Alternative Work Schedule Overtime Class (Class 1):

> All current and former California-based hourly
> employees who work or worked for defendants pursuant
> to an alternative workweek schedule (AWS), at
> defendants' California hospitals from June 1, 2005,
> through the present who left work between the 8th
> and 12th hour of their shift, and were not paid
> daily overtime.

**1. Applicable Law**

Under California law, a "regularly scheduled alternative workweek" schedule is allowed when adopted by vote of the

4

employees.  Cal. Labor Code § 511.  Under the relevant Wage Order, in the health care industry an acceptable alternative workweek schedule ("AWS") includes "work days exceeding ten (10) hours but not more than 12 hours within a 40-hour workweek."  Cal. Code Regs. tit. 8, § 11050(3)(B)(8). "If an employer . . . requires an [AWS] employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of (8) hours . . . for the day the employee is required to work the reduced hours."  Cal. Code Regs. tit. 8, § 11050(3)(B)(2).  "In essence, the employer must pay a 'short-shift penalty' if AWS employees are required to work fewer hours than scheduled." Huntington Memorial Hosp. v. Superior Court, 131 Cal. App. 4th 893, 909 (2005).  The short-shift penalty is intended to give employers the benefit of an AWS while protecting employees by requiring regular shifts.[2]

### 2. Plaintiffs' Allegations

Plaintiffs allege that AWS employees are frequently required to leave after working eight hours but before completing their full twelve-hour shift.  They assert that Defendants have a practice of

---

[2]"The phrase 'regularly scheduled,' as set forth in Labor Code § 511(a), means that the employer must schedule the actual work days and the starting and ending time of the shift in advance, providing the employees with reasonable notice of any changes, wherein said changes, if occasional, shall not result in a loss of the overtime exemption.  However, in no event does Labor Code § 511(a) authorize an employer to create a system of 'on-call' employment in which the days and hours of work are subject to continual changes, depriving employees of a predictable work schedule."  (California Department of Industrial Relations, Industrial Welfare Commission, Statement as to the Basis, http://www.dir.ca.gov/iwc/statementbasis.htm.)

1   "flexing off" employees when there is a low patient census and not

2   compensating them at the overtime rate for any hours they worked

3   over eight on days when they were flexed off.  The class they

4   propose comprises all AWS employees who worked more than eight but

5   fewer than twelve hours and did not receive overtime compensation

6   for the hours in excess of eight.

7           **3. Standing**

8        Defendants argue that this Class is overbroad because it

9   includes employees who voluntarily cut their shifts short as well

10  as employees who were required to leave early. (Response to

11  Plaintiff's Revised Class Definitions ("Resp. to Rev'd Class

12  Defs.") 1.)  Under the relevant Wage Order, an employer must pay

13  overtime only if an AWS employee is required to work fewer hours

14  than her full shift.  Cal. Code Regs. tit.8, § 11050(3)(B)(2).

15  Defendants argue that because the Class includes employees who left

16  voluntarily after eight hours, the class includes members without

17  standing and is therefore unascertainable.  See <u>Sanders v. Apple,</u>

18  <u>Inc.</u>, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)("No class may be

19  certified that contains members lacking Article III standing. . . .

20  The class must therefore be defined in such a way that anyone

21  within it would have standing.")

22       The court agrees that the proposed class definition is

23  overbroad, but finds that it can be remedied by restricting the

24  Class to those employees who were required to leave work between

25  the 8th and 12th hour.  Henceforward the court will use the

26  following definition for Class 1:

27           All current and former California-based hourly

28           employees who work or worked for Defendants pursuant

                                   6

1      to an alternative workweek schedule (AWS), at

2      Defendants' California hospitals from June 1, 2005,

3      through the present who were <u>required to leave</u> work

4      between the eighth and twelfth hour of their shift,

5      and were not paid daily overtime.

6  (Emphasis added to indicate court's modification.)

### 4. Predominance (23(b))

8      Because Defendants' primary objections to this Class pertain

9  most directly to predominance, the court will address Rule 23(b)

10 before turning to the 23(a) analysis.

11     Under Rule 23(b)(3), a plaintiff seeking to certify a class

12 must show that questions of law or fact common to the members of

13 the class "predominate over any questions affecting only individual

14 members, and that a class action is superior to other available

15 methods for fairly and efficiently adjudicating the controversy."

16 Fed. R. Civ. P. 23(b)(3). Defendants argue that this Class does not

17 meet the predominance requirement because there is a question in

18 each instance as to whether an employee chose to leave early or was

19 required to do so.  This, they assert, is the dispositive issue,

20 since employees who leave voluntarily after eight hours are not

21 entitled to compensation.  According to Defendants, Plaintiffs have

22 not proposed a manageable method of answering the individual

23 question of whether in each instance an employee was "required" to

24 leave early.

25     Plaintiffs present evidence that tends to show that Defendants

26 had a policy of not paying overtime to AWS employees working more

27 than eight hours but less than a full AWS shift.  None of the

28 deponents indicated an awareness of the legal requirement to do so.

Payroll coordinators and officers indicated that they were not aware of the law regarding short-shift penalties.  Nancy Wilson, Chief Financial Officer at Kindred La Mirada, testified that the only time AWS employees are entitled to overtime is when they work over 12 hours in a day or 40 hours in a week.  (Wilson Depo. 109:1-9.)  She had never heard of a "short shift premium."  (Wilson Depo. 121:2-3.)  Defendants apparently did not record whether an AWS employee had left voluntarily or was required to leave and that no overtime was paid as a rule in such situations.  (Davies Depo. 30:18-31-8.)

Plaintiffs also present evidence that there is no code in the Kronos time keeping system that a payroll officer could use to indicate that an employee was entitled to a short-shift penalty. Renay Thommen, Senior Director of Payroll at KHOI, testified that there was no code to indicate whether an employee had voluntarily left under those circumstances or if she had been required to leave.  (Thommen Depo. 210:23-211:5.)

Plaintiffs also present evidence that employees were not informed that they are entitled to a short-shift premium if they are required to leave before the end of their AWS shift.  While the employment agreement states that AWS employees working more than 40 hours in a week or 12 hours in a day will receive overtime for excess hours, it makes no mention of the short-shift penalty.  (See Exhs. 34, 40, 46.) Because the employment policies deal with other details pertaining to AWS overtime, the failure to address short

shift penalties tends to indicate a policy of not paying such premiums.[3]

Defendants argue that even if Kindred Human Resources is not equipped to handle the short shift penalty, individualized questions predominate because in each instance of a short shift, the court would have to determine whether an employee was required to leave or left voluntarily.  In support of this, Defendants point to depositions from the named Plaintiffs that are in tension with Plaintiffs' claim that AWS employees were required to leave early. Defendants point to Burney's statement that she was never required to leave a shift early nor did she require the employees she supervised to leave early.  (Burney Depo. 62:15-24.)  They point to Escano's testimony that some days ("few and far between") she left early to pick her son up from school, although she does not have a record of those days.  (Escano Depo. 142:22-144:1.)  Based on this mixed testimony, Defendants argue that there is neither substantial evidence of requiring employees to leave nor a class-wide means of answering this question.

The California Supreme Court addressed a similar issue in the context of misclassification of employees in Sav-On Drugstores,

_____

[3]Defendants cite Gonazlez v. Millard Mall Servs, Inc., 281 F.R.D. 455, 464 (S.D. Cal. 2012), in support of the proposition that the lack of a policy does not establish a violation or constitute evidence that common issues predominate. The two cases are distinguishable.  In Millard Mall, there was an express policy against spilt shifts, as stated in the union agreement.  The employer's lack of a policy regarding split shifts could not be taken as evidence of a violation because split shifts were not permitted by the CBA.  Here, in contrast, there is no mention of a short-shift penalty for AWS employees in their employment agreements, and no other indication of a stated policy of paying the short-shift penalty, but there is also no stated prohibition on short-shifts.

1   <u>Inc. v. Superior Court of Los Angeles County</u>, 34 Cal. 4th 319
2   (2004). The defendants in that case argued that "whether any
3   individual member of the class is exempt or nonexempt from the
4   overtime requirements depends on which tasks that person actually
5   performed and the amount of time he or she actually spent on which
6   tasks" and that therefore "no meaningful generalizations about the
7   employment circumstances of its managers could be made." <u>Id.</u> at
8   325. That court found that "[t]he record contains substantial, if
9   disputed, evidence that deliberate misclassification was
10  defendant's policy and practice." <u>Id.</u> at 329. Based on such
11  evidence, the court concluded that "to the extent plaintiffs are
12  able to demonstrate . . . that misclassification was the rule
13  rather than the exception, a class action would be the most
14  efficient means of resolving class members' overtime claims." <u>Id.</u>
15  at 330. "Even if some individualized proof of such facts ultimately
16  is required to parse class members' claims, that such will
17  predominate in the action does not necessarily follow." <u>Id.</u> at 334.
18        The issue here is whether determining that an employee was
19  required to leave depends on individual or class-wide evidence.
20  Plaintiffs appear to argue that they can present objective evidence
21  that Kindred has a policy of requiring employees to leave when the
22  patient census is low, what they refer to as the employees being
23  "flexed off." The theory is that the supervisor looks at the
24  patient census, determines the number of employees required by
25  statute, and then determines how many employees, if any, will be
26  required to leave. At that point, the supervisor may ask the
27  employees who among them wishes to leave. Theoretically, that
28  question should result in an employee either leaving voluntarily or

being required to leave.  If she leaves voluntarily, she should be paid at her usual hourly rate for the hours worked beyond eight. If she is required to leave, she should be compensated at the overtime rate (time-and-a-half) for the hours she worked over eight but under twelve.

Here, however, it appears that neither employees nor human resources staff know that employees who are required to leave are entitled to a short-shift penalty.  In the absence of this information, even if the supervisor asks for volunteers, the choice to leave is not truly voluntary since employees are not aware that they would be entitled to overtime pay if they were required to leave, but not if they volunteer.  With this knowledge of their rights, employees might, for instance, collectively agree not to volunteer, such that the employer would have to require employees to leave and pay the short-shift penalty if they wished to reduce the staffing roster at a given time.

In the absence of such knowledge of rights, an employee's decision to "volunteer" to take a short shift cannot be considered voluntary.  Plaintiffs are likely to be able to use class-wide proof in the form of time and patient census records to show that requiring employees to leave based on low patient census was "the rule rather than the exception." Sav-On, 34 Cal. 4th at 330.  Some individualized questions may remain, as evidenced in certain depositions where Plaintiffs testified to their occasional need to leave early for specific reasons.  Such questions do not preclude class treatment.  "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." Id. at 334.

1        "[I]f unanticipated or unmanageable individual issues do

2   arise, the trial court retains the option of decertification." <u>Id.</u>

3   at 335. Decertification of this class would be appropriate if, for

4   instance, Plaintiffs were not able to use time and patient census

5   records to demonstrate a policy of "flexing off," or if Plaintiffs

6   could demonstrate such a policy only at some of the Kindred

7   hospitals.

8        The court therefore finds that this Class meets the Rule 23(b)

9   predominance requirement.

10              **5. Rule 23(a) Requirements**

11        Defendants contend that this Class does not meet the

12   requirement of commonality.  Commonality for purposes of Rule

13   23(a)(2) "requires the plaintiff to demonstrate that the class

14   members have suffered the same injury.  This does not mean merely

15   that they have all suffered a violation of the same provision of

16   the law . . . . Their claims must depend upon a common contention."

17   <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2551 (internal

18   quotation marks and citation omitted).  Defendants make an argument

19   similar to their argument with respect to predominance, namely that

20   Plaintiffs fail to present evidence of a uniform policy or practice

21   and that statistical evidence from time records cannot explain why

22   an employee left early.  As discussed above, the court finds that

23   Plaintiffs have presented sufficient evidence of a policy of not

24   compensating Plaintiffs for short shifts, which is equally evidence

25   of Plaintiffs' common injury.  The court thus finds that there is

26   commonality.

27        Defendants do not dispute that this Class meets the

28   requirements of numerosity, typicality, and adequacy.  The court

1    finds that these requirements are satisfied and the AWS Class is

2    suitable for certification.

3        **C. Regular Rate Class**

4        Plaintiffs propose the following definition for their Regular

5    Rate Class (Class 2):

6        All California based hourly employees who work or

7        worked for Defendants' hospitals at any time between

8        June 1, 2005, and the present who were paid a double

9        time premium and/or paid for at least one missed

10       meal period payment. (These payments are made by

11       defendant at the base rate and not the legally

12       required regular rate.)

13           **1. Applicable Law**

14       Under California law, work in excess of 12 hours per day is

15   compensated at double the employee's "regular rate of pay."  Cal.

16   Labor Code § 510. California also requires that when an employer

17   fails to provide an employee a mandated meal or rest period, the

18   employee is entitled to one additional hour of pay at the

19   employee's "regular rate of compensation."  Cal. Labor Code §

20   226.7.  California law uses the definition of "regular rate" from

21   the Fair Labor Standards Act.  See <u>Advanced-Tech Sec. Servs., Inc.</u>

22   <u>v. Superior Court</u>, 77 Cal. Rptr. 3d 757, 762-63 (2008).  Under the

23   FLSA, the "regular rate" includes "all remuneration for employment

24   paid to, or on behalf of, the employee," with some exceptions.  29

25   U.S.C. § 207.  Plaintiffs assert that their regular rate includes

26   shift differentials and education and bonus compensations, as

27   mandated by 29 C.F.R. 778.110, and 778.200, 778.208.

28           **2. Plaintiffs' Allegations**

1    Plaintiffs present evidence that the double time premium and
2  missed meal period payments are paid at the base rate, not the
3  regular rate.  Plaintiffs offer a declaration from economist and
4  statistician Dwight Steward who determined that "employees were
5  compensated for their double time hours and their missed meal
6  penalty payments at the employees' standard hourly rate," not at
7  the regular rate.  (RJN Exh. 12; Decl. Steward ¶¶ 3-5.)  Kindred
8  Human Resources employees likewise indicated in their depositions
9  that double time and missed meal period penalties are paid at the
10 base rate, not the regular rate.  (Thommen Dep. 223:10-13, 224: 22-
11 25.)  Indeed, Kindred's missed meal period policy states that when
12 a meal penalty is paid, "the additional hour will be paid at base
13 rate of pay . . . ." (Carney Decl., Exh. 31, "Missed Meal –
14 California.")

15         **3. Rule 23(a) and (b) Requirements**

16    Defendants do not assert, nor does the court find, that this
17 class fails to meet any of the Rule 23(a) or (b) requirements.
18 Their sole critique is that the class includes employees who do not
19 receive any of the bonuses or other benefits that enter into the
20 calculation of the regular rate and thus whose compensation for
21 missed meal periods and double time at the base rate was proper.

22    The court finds that the class can be limited so as to narrow
23 the class to those employees with standing.  Henceforth Class Two
24 shall be defined as follows:

25         All California-based hourly employees who work or
26         worked for Defendants' hospitals at any time between
27         June 1, 2005, and the present who were paid a double
28         time premium and/or paid for at least one missed

                              14

1      meal period payment <u>at the base rate instead of the</u>

2      <u>regular rate to which they were entitled</u>.

3 So limited, the Class is appropriate for certification.

4      **D. Waiting Time Class**

5      Plaintiffs propose the following definition for their Waiting

6 Time Class (Class 4):

7      All current and former California-based hospital

8      employees employed as hourly, non-exempt employees

9      by Defendants who work or worked for Defendants from

10      June 1, 2006, through the present who left

11      Defendants' employ during this period and are a

12      member of either Class 1, 2, Class 5, Subclasses 5,

13      5B, 5C, this is a derivative claim only.

14      Under California law, if an employer willfully fails to pay

15 the wages of an employee who is discharged, the wages shall

16 continue as a penalty until paid but for not more than 30 days.

17 Cal. Labor Code § 203.  This Class is derivative of the other

18 classes.  The court certifies it to the same extent that it

19 certifies the other classes.

20      **E. Meal Period Classes**

21      **1. Failure to Provide All Meal Periods**

22      Plaintiffs propose the following definition for their Failure

23 to Provide Meal Periods Class (Class 5):

24      All current and former California-based hourly

25      hospital employees employed by Defendants from June

26      1, 2005, to the present, who were not provided

27      legally compliant meal periods within the first 5

28      hours of their shift.

### a. Applicable Law

California law requires that employers "provide a first meal period after no more than five hours of work . . . ." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1049 (2012). In Brinker, the California Supreme Court held that "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." Id. at 1034. The meal period requirement is only "satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) is free to leave the premises, and (3) is relieved of all duty for the entire period." Id. at 1036.

### b. Plaintiffs' Allegations

Plaintiffs allege that Kindred has a policy of failing to provide meal breaks within the first five hours. As evidence of this policy, they present Defendants' meal period policy documents which do not state that meals are to be taken in the first five hours of the shift. Those policies state that "[e]mployees will be provided a one-half hour unpaid meal break in accordance with state law. . . . If you are a non-exempt employee, you must clock out unless your facility allows for an automatic meal deduction." (Carney Decl., Exh. 2.) They also present deposition testimony from Laurie Yamamori, Payroll Benefits Coordinator at Kindred Hospital Baldwin Park, stating that she does not review time cards to determine whether the meal break was taken at a certain time of the day. (Yamamori Depo. 55:22-25.) Additionally, Plaintiffs reviewed time cards (Decl. Carney, Exhs. 12, 13, and 14) and determined that Maximo had 13 late meal periods, Burney had 134 late meal periods, and Escano had 28 late meal periods. (Carney

Decl. RE: Reply ¶ 5.)  Finally, Plaintiffs assert that when they
correlate employee time records with patient census records, they
will show whether Plaintiffs' late lunches coincide with times when
the hospital had insufficient staff coverage to relieve employees
of all duties for a meal period while maintaining the mandated
patient-to-staff ratio.

### c. Predominance

This court has previously indicated its agreement with
Justices Wedegar and Liu that if a meal period is not taken by the
employee, the burden falls on the employer to rebut the presumption
that meal periods were not adequately provided.  See Brinker, 53
Cal. 4th at 1053 (Werdegar, J., concurring)("If an employer's
records show no meal period for a given shift over five hours, a
rebuttable presumption arises that the employee was not relieved of
duty and no meal period was provided.").  "Otherwise, employers
would have an incentive to ignore their recording duty, leaving
employees the difficult task of proving that the employer either
failed to advise them of their meal period rights, or unlawfully
pressured them to waive those rights."  Ricaldai v. U.S.
Investigations Servs., LLC, 878 F. Supp. 2d 1038, 1044 (C.D. Cal.
2012).

Here, the records offered by Plaintiffs show that a meal
period was sometimes not provided to named Plaintiffs within the
five hours.  Under this court's holdings, for an individual
plaintiff the burden would fall on the employer to rebut the
presumption of inadequate meal periods.  The issue here is where
the burden lies for the purposes of class certification.  This
court addressed a similar issue with respect to the

17

1  misclassifcation of employees in <u>Marlo v. United Parcel Serv.,</u>

2  <u>Inc.</u>, 251 F.R.D. 476 (C.D. Cal. 2008).  This court held:

3        As to any individual, UPS would have the burden of

4        proving the exemption was proper.  However, as to a

5        class-wide finding of misclassification which is the

6        result Plaintiff seeks here, Plaintiff would have

7        the ultimate burden of showing misclassification on

8        a class-wide basis.  This does not mean to succeed

9        at trial, or to otherwise maintain a class action,

10       that Plaintiff is required to show that all or

11       substantially all FTS were misclassified.  Rather,

12       Plaintiff must show that it is more likely than not

13       that UPS's exemption as applied to FTS was a policy

14       or practice of misclassification.  In any event, a

15       plaintiff must provide common evidence of

16       misclassification to maintain class certification

17       and proceed with a class action trial.

18  <u>Id.</u> at 482-83.

19       The issue here is similar.  Although the burden falls on

20  Kindred to rebut the presumption of inadequate meal periods for an

21  individual employee, Plaintiffs have the ultimate burden to prove

22  that Defendants have a policy of inadequate meal provision.

23  Plaintiffs must provide common evidence of inadequate meal periods

24  to satisfy the 23(b) predominance requirement and obtain class

25  certification.

26       To satisfy the 23(b) predominance requirement, "it is not

27  enough simply that common questions of law or fact exist;

28  predominance is a comparative concept that calls for measuring the

18

relative balance of common issues to individual ones." <u>Marlo</u>, 251
F.R.D. at 483. "The need for common proof recognizes that a
plaintiff's evidence should have some common application to class
members in order to provide a basis for the jury to find that [the
policy] 'was the rule rather than the exception.'" <u>Id.</u> at 484
(quoting <u>Sav-On</u>, 34 Cal. 4th at 330).  The predominance requirement
is not met "when a plaintiff brings a claim on a class-wide basis
that raises individualized issues, but fails to provide common
proof that would have allowed a jury to determine those issues on a
class-wide basis." <u>Marlo</u>, 251 F.R.D. at 485.

   Plaintiffs' proposed proof of correlating missed meals with
patient census records may be common proof that would allow the
issue of missed meal periods to be determined on a class-wide
basis.  However, Plaintiffs have not provided any such proof or
attempted, so far as the court knows, to obtain patient census
records and perform a sample of the necessary analysis.  Such
analysis could conceivably demonstrate that it was more likely than
not that in a given instance of a missed meal, Plaintiff was not
provided with that meal because of Defendants' policy.  However,
Plaintiffs have not provided such evidence.

   The only common evidence before the court is evidence that the
meal policy does not specifically mention a review for a meal
within the first five hours and that the named Plaintiffs did miss
some (but not all) meals.  In contrast, Defendants have emphasized
evidence of disparate processes that different hospital facilities
and departments had of handling meal period scheduling and
coverage.  Some facilities had written meal schedules posted by
supervisors, while others sometimes had such schedules, and still

others never had them. (<u>See, e.g.</u>, Escano Depo. 124:4-125:4; Burney
Depo. Vol. I, 55:8-56:3, 61:1-9, 62: 19-22, 65:6-66:15; and Silva
Depo. 92:20-94:12.) Facilities and departments also differed in how
coverage was provided for employees during meal periods.  Maximo
testified that if she wanted to take a break but was with a
patient, she had to wait until somebody could cover for her.
(Maximo Depo. 90:5-12.)  Silva testified that respiratory
therapists were instructed to give their pager to another therapist
when ready to take a meal break.  (Silva Depo. 97:4-98:4.)  Burney
testified that as a supervisor, she would cover for employees who
wanted to take their break or help find them coverage.  (Burney
Depo. Vol. 1, 88:19-91:20.)

These differences would not necessarily overcome common
evidence of a Kindred-wide policy to delay meal periods for
purposes of staff coverage, but the evidence that Plaintiffs have
in fact put forward is insufficient to meet their burden of
establishing predominance.

Plaintiffs do not argue, nor does the court find, that they
meet any of the other 23(b) requirements.  This class is therefore
not appropriate for certification.

### 2. Meal Waiver Subclass

Plaintiffs propose the following definition for their Meal
Waiver Class (Class 5B):

All current and former California-based hourly
hospital employees regularly scheduled to work 12
hour shifts who worked for Defendants from June 1,
2005, to the date of judgment who signed a meal

20

1  waiver as a condition of employment when hired by

2  Defendants.

### a. Predominance (23(b))

4  Under California law, AWS employees may waive their right to

5  one of two meal periods.[4]  Plaintiffs present evidence that all or

6  nearly all AWS employees do sign the second meal waiver.  The

7  Kindred Missed Meal Policy, produced in both <u>Fitzpatrick</u> and

8  <u>Escano</u>, states: "Employees are entitled to a second meal after 12

9  hours.  Most 12-hour employees who have signed a 12-hour agreement,

10 also have an agreement to waive their right to the second meal.

11 The Missed Meal penalty is not automated for a 2nd meal in a

12 shift."  (Carney Decl., Exh. 31.)  Annette Bibal, Human Resources

13 Director at Kindred Hospital Baldwin Park, testified that no AWS

14 employees who were hired since she was at Kindred have not signed

15 the meal waiver.  (Bibal Depo. 31:13-32:24.) Kristen Davies

16 testified that because "our employees sign a meal waiver for their

---

[4]"Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods. In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may revoke the waiver at any time by providing the employer at least one (1) day's written notice. The employee shall be fully compensated for all working time, including any on-the-job meal period, while such a waiver is in effect." Cal. Code Regs., tit. 8, § 11050.

"[H]ealth care representatives persuaded the IWC to at least preserve expanded waiver rights for their industry, along the lines of those originally afforded in 1993. (See IWC statement as to the basis (Jan. 1, 2001) pp. 19–20.) Accordingly, wage order No. 4-2001 and No. 5-2001 each contains a provision absent from other wage orders, permitting health care employees to waive one of two meal periods on longer shifts. (IWC wage order No. 4-2001 (Jan. 1, 2001) (Cal.Code Regs., tit. 8, § 11040, subd. 11(D)); Wage Order No. 5, subd. 11(D).)" <u>Brinker Rest. Corp. v. Superior Court</u>, 53 Cal. 4th 1004, 1047 (2012).

second meal" and that "[t]hey sign it when they're hired." (Davies Depo. 16:12-17:1.)

More explicitly, the declarations of Maximo, Escano, and Burney state that Plaintiffs must sign the waiver as a condition of employment. (Maximo Decl., Exh 1 ¶ 4 ("As an LVN at Kindred, I was required to waive one of my two meal periods as a condition of employment. I recall being asked to sign the waiver and felt that there was no option but to sign it."); Escano Decl. ¶ 5 (same); Burney Decl. ¶ 5 (same).) Defendants assert that this contradicts their deposition testimony. (See, e.g., Escano Depo. 76:24-77:6 (saying she did not recall anybody ever telling her that she had to sign the waiver); Maximo Depo. 70:6-17 (saying that nobody told her she had to sign the waiver even if she didn't want to); Seckler Depo. 55:25-56:9, (saying that at the orientation, they explained that "I could have taken a second 30-minute break, but I put on here that I waived it. But they didn't get in-depth.").)

The court finds that the apparently universal signing of the second meal waiver lends itself to the inference that signing the waiver is a condition of employment and gives rise to a class question.[5] Although the deposition testimony indicates that there may not have been an overt requirement of signing the meal waiver, the pressure may have been implicit but nonetheless strong enough for Plaintiffs to believe that if they did not sign the meal

---

[5]Defendants cite Washington v. Joe's Crab Shack, 271 F.R.D. 629, 641 (N.D. Cal. 2010), for the proposition that whether an employee signed a meal period waiver voluntarily is inherently an individualized issue. That case is distinguishable from the current case, however, because there some employees signed a waiver and some did not. Here, all employees signed a waiver, making the issue of the waiver a common question of fact.

1  waiver, they would not be hired.  Plaintiffs have therefore met

2  their burden of demonstrating predominance under 23(b).

3                     **b. Rule 23(a) Requirements**

4       Defendants do not challenge the numerosity, typicality, or

5  adequacy of this class.  They do argue that this class does not

6  meet the Rule 23(a) commonality requirement because whether an

7  employee signed a meal waiver voluntarily is an inherently

8  individualized issue.  As articulated above, the court finds that

9  there is sufficient evidence of a common question of fact, namely,

10 whether employees were required to waive their second meal period

11 as a condition of employment.

12      This class is appropriate for certification.

13                     **3. Third Meal Subclass**

14      Plaintiffs propose the following definition for their Third

15 Meal Subclass (Class 5C):

16      All current and former California-based hospital

17      hourly employees who worked for Defendants June 1,

18      2005, to the date of judgment and worked over a

19      twelve (12) hours in a shift without being provided

20      an additional meal period or requisite payment for

21      said meal.

22      Brinker explained that the second meal period does not have to

23 be five hours after the first, but instead "after no more than 10

24 hours of work."  Brinker, 53 Cal. 4th at 1042. "[W]e conclude the

25 IWC abandoned any requirement that work intervals be limited to

26 five hours following the first meal break."  Id. at 1046.  "Under

27 the wage order, as under the statute, an employer's obligation is

28 to provide a first meal period after no more than five hours of

                                    23

1   work and a second meal period after no more than 10 hours of work."

2   Id. at 1049.  By Brinker's logic that there are no additional

3   timing requirements, it appears that the third meal would be due

4   after no more than 15 hours of work.

5        The court is aware that given the universal waiver of the

6   second meal, AWS employees working overtime could go ten hours

7   without a meal break.  However, the court cannot see any statutory

8   or other authority to require meal periods under these

9   circumstances.  The current law is clear that meal waivers on

10  shifts in excess of 12 hours are permitted.[6]

11       Because there is no requirement to provide a third meal period

12  until the end of hour 15, Plaintiffs have not established a common

13  legal question for this subclass. It is therefore not certified.

14       **F. Wage Statement Class**

15       Plaintiffs propose the following definition for their Wage

16  Statement Class (Class 6):

17       All current and former California-based hourly

18       hospital employees who worked for Defendants June 1,

19       2008, to the date of judgment who were not provided

20       pay stubs that complied with California Labor Code §

21

22       _____

         [6]"Notably, the waiver provisions permit meal waivers even on
23  shifts in excess of 12 hours and thus conflict with language in the
    standard subdivision regulating second meal periods in other wage
24  orders that limits second meal waivers to shifts of 12 hours or
    less (see, e.g., IWC wage order No. 2-2001 (Jan. 1, 2001) (
25  Cal.Code Regs., tit. 8, § 11020, subd. 11(B))). For this reason,
    the IWC elected to omit that standard subdivision from these two
26  wage orders. (See IWC statement as to the basis (Jan. 1, 2001) pp.
    19-20.)  Because the omission related to waiver and was not the
27  product of any intent to include different meal timing requirements
    in Wage Order No. 5, we interpret that order as imposing the same
28  timing requirements as those in most of the IWC's other wage orders
    and in Labor Code section 512." Brinker, 53 Cal. 4th at 1047-48.

226, which failed to include: total hours worked, all applicable hourly rates, and the gross wages.

### 1. Applicable Law

California law places a number of requirements on employee pay stubs.  Section 226(a) of the Labor Code states those requirements, which include, among other things, a statement of gross wages, total hours, and deductions. Cal. Labor Code § 226(a).  Under the same provision, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [§ 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Id. § 226(e).

The parties, and courts, disagree on the nature of the injury requirement.  Kindred asserts that a paycheck deficiency under § 226(a) is not per se an injury making the employee eligible for compensation; it argues that the issue is whether the pay stub provides sufficient information to enable an employee to confirm whether she is properly paid.  See, e.g., Morgan v. United Retail, Inc., 186 Cal. App. 4th 1136 (2010).

Plaintiffs cite cases holding that the injury requirement is minimal.  Jaimez v. DAIOHS USA, Inc., 181 Cal. App. 4th 1286, 1306 (2010)("While there must be some injury in order to recover damages, a very modest showing will suffice.") Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 374 (C.D. Cal. 2009) (quoting Elliot v. Serion Pacific Work, LLC, 572 F. Supp. 2d 1169, 1181

(C.D. Cal.2008))("[T]he types of injuries on which a Section 226 claim may be premised include 'the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.'") <u>Wang v. Chinese Daily News, Inc.</u>, 435 F. Supp. 2d 1042, 1050-51 (C.D. Cal. 2006) ("Additionally, this lawsuit, and the difficulty and expense Plaintiffs have encountered in attempting to reconstruct time and pay records, is further evidence of the injury suffered as a result of CDN's wage statements. Plaintiffs' ability to calculate unpaid and miscalculated overtime is complicated by the missing information required by Section 226(a). The purpose of the requirement is that employees need not engage in the discovery and mathematical computations to analyze the very information that California law requires.")  This court agrees that the injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute.

The court is reinforced in this interpretation of the injury requirement by the recent statutory amendment to Section 226 clarifying the injury requirement by providing a statutory definition. Section 226(e) now states that "[a]n employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete information as required by one or more of [the section (a) requirements] and if the employee cannot promptly and easily determine from the wage statement alone . . . (i) The amount of

gross wages or net wages . . . (ii) Which deductions the employer made from gross wages to determine the net wages . . . ."  Cal. Labor Code § 226(e).  The Senate Bill Analysis indicates that because of the "contradictory and inconsistent interpretations of what constitutes 'suffering injury' . . . in the various court cases . . . it is necessary to provide further clarity on the issue . . . ."  SB 1255 Bill Analysis, http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1251-1300/sb_1255_c fa_20120828_175021_sen_floor.html.  Although this statutory modification is not dispositive of the issue, the court finds it persuasive.

### 2. Plaintiffs' Allegations

All Kindred pay stubs have the same format, regardless of the hospital.  (Thommen Depo. 228:1-3.)  Until June 2010, the pay stubs did not contain the total number of hours worked and do not include the various rates of pay.  (Thommen Depo. 228:1-234:15; Thommen (PMQ) 16:12-17:9; Carney Decl., Exhs. 8-10; 17-18; 27; RJN Exh. 12, Steward Decl. ¶ 4.)

### 3. Rule 23(a) and (b) Requirements

The court finds that the minimal injury requirement has been met by Plaintiffs' inability to determine whether they have been paid appropriately, and finds that this class is appropriate for certification, with one modification.  Because the Kindred pay stubs were modified in June 2010 to include the missing 226(e) items, the Class should be limited to claims prior to that date, with the exception of claims that Defendant failed to include the appropriate pay rate (i.e. regular rate).  The latter claims are ongoing.

1    The Class definition is therefore revised as follows:

2    All current and former California-based hourly

3    hospital employees who worked for Defendants <u>at the</u>

4    <u>base rate only from June 1, 2008, to June 1, 2010,</u>

5    <u>or who worked for Defendants at the base and regular</u>

6    <u>rate from June 1, 2008, to the date of judgment,</u> who

7    were not provided pay stubs that complied with

8    California Labor Code § 226, which failed to

9    include: total hours worked, all applicable hourly

10   rates, and the gross wages.

11   (Emphasis added to indicate the court's modifications.)

12   **IV. CONCLUSION**

13   For these reasons, the Court certifies Classes 1, 2, 4, 5B,

14   and 6, and does not certify Classes 5 or 5C.  The certified Classes

15   are defined as follows:

16   1. All current and former California-based hourly employees
     who work or worked for Defendants pursuant to an alternative
17   workweek schedule (AWS), at Defendants' California hospitals
     from June 1, 2005, through the present who were required to
18   leave work between the eighth and twelfth hour of their shift,
     and were not paid daily overtime.

19
     2. All California-based hourly employees who work or worked
20   for Defendants' hospitals at any time between June 1, 2005,
     and the present who were paid a double time premium and/or
21   paid for at least one missed meal period payment at the base
     rate instead of the regular rate to which they were entitled.

22
     3. All current and former California-based hospital employees
23   employed as hourly, non-exempt employees by Defendants who
     work or worked for Defendants from June 1, 2006, through the
24   present who left Defendants' employ during this period and are
     a member of another certified Class.

25
     4. All current and former California-based hourly hospital
26   employees regularly scheduled to work 12 hour shifts who
     worked for Defendants from June 1, 2005, to the date of
27   judgment who signed a meal waiver as a condition of employment
     when hired by Defendants.

28

5. All current and former California-based hourly hospital employees who worked for Defendants at the base rate only from June 1, 2008, to June 1, 2010, or who worked for Defendants at the base and regular rate from June 1, 2008, to the date of judgment, who were not provided pay stubs that complied with California Labor Code § 226, which failed to include: total hours worked, all applicable hourly rates, and gross wages.

IT IS SO ORDERED.


Dated: March 5, 2013

DEAN D. PREGERSON
United States District Judge